UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LEE KNOWLIN,

                Petitioner,

                                              Case No. 19-cv-261-pp

    v.

LIZZIE TEGELS,[1]

                Respondent.

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 33), DENYING PETITIONER'S MOTION FOR RECONSIDERATION OF HABEAS CORPUS ORDER (DKT. NO. 26), DENYING PETITIONER'S NOTICE OF MOTION AND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION (DKT. NO. 37), DENYING PETITIONER'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING RESOLUTION OF HABEAS CORPUS PROCEEDINGS (DKT. NO. 38), DENYING PETITIONER'S SUPPLEMENTAL EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION (DKT. NO. 45), GRANTING PETITIONER'S MOTION TO EXPEDITE NON-DISPOSITIVE MOTIONS (DKT. NO. 51), DISMISSING CASE AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

On February 19, 2019, the petitioner, representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254, challenging his parole revocation. Dkt. No. 1. The court will grant the motion to dismiss because the petitioner procedurally defaulted his claims. He failed to fairly

---

[1] Under Rule 2 of the Rules Governing Habeas Cases, "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." In February 2020, the petitioner was transferred to Jackson Correctional Institution; this order reflects Warden Lizzie Tegels as the respondent. Dkt. No. 41.

1

present the claims to the Wisconsin appellate courts, and the Racine County Circuit Court relied on an adequate and independent state-law ground in denying relief.

## I.    **Background**

### A.    State Case

In June of 2000, a Racine County jury convicted the petitioner of armed burglary and carrying a concealed weapon. Dkt. No. 34-1; see also State v. Knowlin, Racine County Circuit Court, Case No. 99CF000617 (available at https://wcca.wicourts.gov). Six months later, the court sentenced the petitioner to twenty years for the armed burglary count and one year for the concealed weapon count, consecutive to the armed burglary count. Dkt. No. 34-1. In April of 2017, the state released the petitioner on parole. Dkt. No. 21-1 at 73.

### B.    Revocation

In November 2018, the Department of Corrections recommended revocation of the petitioner's parole based on several allegations of parole violations. Id. at 19-26. The DOC agent alleged that between October of 2017 and October of 2018, the petitioner (1) "legally change[d] his name . . . and failed to report [the] change to his agent;" (2) "fail[ed] to inform his agent of a change in employment;" (3) "force[d] Cindy Elmore to perform oral sex on him;" (4) "grab[bed] Cindy Elmore by the hair and pull[ed] her out of a vehicle;" (5) "fail[ed] to report to his agent;" (6) "refus[ed] to submit to a urinalysis at the Brown County Jail;" (7) "arrang[ed] for Michelle Stuckart to have sex with

2

people in exchange for money;" and (8) "[took] money earned by Michelle Stuckart by having sex with people in exchange for money." Id. at 19. In response to these allegations, the petitioner appeared with counsel on December 6, 2018 for a parole revocation hearing before an administrative law judge for the Wisconsin Division of Hearings and Appeals. Id. at 72.

On December 21, 2018, the ALJ issued a decision revoking the petitioner's parole. Id. at 78. The ALJ, agreeing with the DOC, found that the petitioner had committed the conduct alleged except for Allegation 6. Id. at 73-76. The DOC had recommended "a little over [two] years re-confinement time," which the ALJ found "inadequate for these violations." Id. at 77. The ALJ found that "[a]nything less than the maximum would unduly depreciate the seriousness of the violations," and ordered the petitioner "re-confined for all the time he ha[d] remaining"—three years, eight months and six days. Id. at 73, 77.

Under Wis. Admin. Code §HA 2.05(8)(A), the petitioner had ten days to appeal the ALJ's decision to the administrator of the DHA. On January 9, 2019, the petitioner, through counsel, appealed the decision of the ALJ to DHA Administrator Brian Hayes. Id. at 79. The petitioner argued that (1) he "took responsibility for his actions and admitted Violation [Five];" (2) the DOC "ha[d] not met its burden of proof regarding the remaining alleged Violations;" (3) "[the petitioner's] right to confront the witnesses against him ha[d] been violated and good cause for not allowing confrontation ha[d] not been shown;" and (4) "the decision to revoke based upon the need to protect the public from further

3

criminal activity, his behavior while on supervision, the need to provide treatment in a confined setting, and the alleged seriousness of the violations [was] not supported by the evidence." Id. at 80. On February 8, 2019, the Administrator affirmed the ALJ's decision. Id. at 87-88.

C.    Federal *Habeas* Background

About a week after the Administrator affirmed the ALJ's decision to revoke the petitioner's parole, the petitioner filed a petition for writ of *habeas corpus* in the Eastern District of Wisconsin. Dkt. No. 1. The petitioner alleged that (1) he was denied his Sixth Amendment and due process rights because he was not allowed to confront Cindy Elmore on her testimonial statements at the revocation hearing; (2) he was denied his due process rights because the DOC failed to meet its burden of proof regarding all alleged parole violations; (3) he was denied his Confrontation Clause rights when Michelle Stuckart refused to answer defense counsel's questions at his revocation hearing; and (4) the rule of supervision he was alleged to have violated—the violation that formed the basis for his revocation—was vague and overbroad. Id. at ¶15.

Along with the petition, the petitioner filed a document entitled "Petitioner's Notice of Motion and Motion to Grant Relief Despite His Failure to Have Pursued a State Remedy Not Available to Him." Dkt. No. 2. The petitioner explained that "there are no available state judicial remedies available for [him] to challenge revocation of his parole." Dkt. No. 2 at 1. As this court's September 20, 2019 order described the motion:

> [The petitioner] stated that in Wisconsin, the proper way to challenge a probation revocation is through a writ of *certiorari*. He wrote that

4

he was indigent, could not afford the filing fee for a writ of *certiorari* and could not get the filing fee waived because under Wis. Stat. §801.02(7)([d]), a state circuit court cannot waive a filing fee if the petitioner previously has had three or more actions dismissed for reasons listed in Wis. Stat. §802.05(3)(b) 1-4. The petitioner admitted that he has had three or more claims dismissed for reasons listed under Wis. Stat. §802.05(3)(b)1-4. He predicted that if he tried to file for a writ of *certiorari* in state court, he would not be allowed to proceed because of his indigency and his history of litigation.

The petitioner asked the court to find that he had properly exhausted his claim. In this motion, he stated that his *habeas* petition asserted that he was actually innocent of his parole violations.

Dkt. No. 24 at 4-5 (internal citation omitted).

At the end of February 2019, Magistrate Judge William Duffin granted the petitioner's motion for leave to proceed without prepaying the filing fee, denied the petitioner's motions for bail and for a stay of his revocation order and recommended that this court dismiss the petition because the petitioner had admitted that he had not exhausted his state court remedies. Dkt. Nos. 9, 10. Judge Duffin noted the petitioner's contention that he "[could not] pay the required costs and fees and the state court [would] not waive these expenses because at least three of his prior lawsuits were dismissed as frivolous." Id. at 2. While Judge Duffin found it "uncertain whether the state court [would] permit [the petitioner] to seek review of the revocation . . . without paying the associated costs and fees," he concluded that "[the petitioner] must seek redress in the state courts before turning to federal court." Id. On March 7, 2019, the petitioner timely objected to Judge Duffin's recommendation. Dkt. No. 13.

5

In the months following his objection, the petitioner continued to file documents. He filed (1) a supplemental objection, dkt. no. 15; (2) a motion to expedite court decision on his objection, dkt. no. 16; (3) a supplement, dkt. no. 17; (4) a brief in support of his motion for stay of revocation order and warrant, dkt. no. 18; (5) a second supplemental objection, dkt. no. 19; (6) an amended motion for bail, dkt. no. 20; (7) a memorandum of law with attached exhibit in support of his motion for bail, dkt. no. 21, (8) a supplemental memorandum of law in support of his amended motion for bail, dkt. no. 22; and (9) a motion to grant extraordinary writs, dkt. no. 23.

The petitioner filed a second petition for writ of *habeas corpus* in July of 2019. Knowlin v. Sheriff Grady Hartman, Case No. 19-cv-1046, Dkt. No. 1. He filed a motion for leave without prepaying the filing fee for that case, dkt. no. 2, and a motion to disqualify the judge, dkt. no. 6. In September of 2019, this court denied those motions. Dkt. No. 8. Simultaneously, the court dismissed that petition because it did not state a ground for *habeas* relief. Id.

After Judge Duffin issued his report and recommendation, the petitioner belatedly attempted to exhaust his state court remedies. Dkt. No. 24 at 7; see also dkt. nos. 19, 19-1, 34-2, 34-3, 34-4; Lee Knowlin v. Brian Hayes, Racine County Case Number 19-IP-05, available at: https://wcca.wicourts.gov/ (last visited June 25, 2020). Specifically, he filed a "Petition for Writ of *Certiorari*/Petition for Writ of *Habeas Corpus*" in the Racine County Circuit Court. Dkt. No. 34-4; see also dkt. no. 34-2. The state petition asserted that (1) the decision to revoke the petitioner's parole was unreasonable; (2) the rule of

6

supervision the DOC accused the petitioner of violating did not provide adequate notice; and (3) the ALJ and the Administrator denied the petitioner his Due Process rights when they denied him the opportunity to confront witnesses, did "not present sufficient evidence . . . in regards to all of the alleged parole violations" and "revoked his parole on appeal for human trafficking and absconding." Dkt. No. 34-4 at 4-5.

The circuit court denied the petition for waiver of the prepayment of the filing fee on June 10, 2019. Dkt. No. 19-1 at 1-2. As the petitioner predicted, the circuit court checked the box which stated that "[t]he prisoner has, on three or more prior occasions, while he or she was incarcerated, imprisoned, confined or detained in a jail or prison, brought an appeal, writ of error, action or special proceeding, including a petition for common law writ of certiorari, that was dismissed by a state or federal court for the reasons listed in §802.05(3)(b) 1 to 4. The petition to proceed without prepayment of filing fees and costs is DENIED." Dkt. No. 19-1 at 2. The circuit court dismissed the *certiorari* petition the same day. <u>Lee Knowlin v. Brian Hayes</u>, Racine County Case Number 19-IP-05, available at: https://wcca.wicourts.gov/ (last visited July 2, 2020). The petitioner did not appeal the dismissal.

In September 2019, this court ruled that through his petition in Racine County Circuit Court, the petitioner had attempted to exhaust his state court remedies. Dkt. No. 24 at 7-8. The court noted that the rationale underlying Judge Duffin's recommendation no longer applied, and the court declined to adopt the recommendation. <u>Id.</u> In the same order, the court denied as moot the

7

petitioner's motion to proceed without exhausting his state remedies. Id. at 8-9. But the court noted its concern that the petitioner may have procedurally defaulted his claims:

> Although it is not appropriate for the court to dismiss the petition for failure to exhaust remedies, it is possible that the petitioner has committed procedural default.
>
> . . .
>
> Procedural default "is an affirmative defense that the State is obligated to raise and preserve, and consequently one that it can waive." [Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004)] (citing Trest v. Cain, 522 U.S. 87, 89 (1997)). The respondent has not yet had the opportunity to respond to the petition, or to raise or waive procedural default or any other affirmative defense, because the court has not yet ordered him to respond. The court will require the respondent to respond to the petition. If the respondent raises the affirmative defense of procedural default in his response, the court will address it then. If the respondent moves to dismiss the petition on the ground of procedural default, the petitioner may file a response brief to explain whether either of the exceptions to procedural default apply . . . .

Id. at 9-10. The court then screened the petition under Rule 4 of the Rules Governing Habeas Cases and ordered the respondent to answer or otherwise respond to the petition. Id. at 10-11. The court denied as moot the petitioner's motion to expedite its decision, id. at 11, denied the petitioner's amended motion for bail, id. at 12, and denied as moot the petitioner's motion to grant extraordinary writ, id. at 14.

On February 3, 2020, the respondent filed a motion to dismiss the petition for procedural default. Dkt. No. 33. The respondent also provided an audio recording of the petitioner's administrative hearing. Dkt. No. 35. A week later, the petitioner filed a flurry of documents with the court. He filed a brief in

8

opposition to the respondent's motion to dismiss. Dkt. No. 36. In an "Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction," the petitioner sought a restraining order and injunction to prevent the respondent "from assigning treatment programs to the petitioner," which he argues "require[] him to incriminate himself . . . or be penalized for refusing to enroll in the programs." Dkt. No. 37 at 1. He also asked the court to order "a re-classification hearing and reconsider his custody classification and placement at a facility. Id. He filed a "Motion for Bail Pending Resolution of Habeas Corpus Proceedings" in which he "move[d] . . . for an order granting him bail on his own personal recognizance pending the final decision on his petition for writ of habeas corpus and appeal, if any." Dkt. No. 38. The petitioner filed a declaration and brief in support of his motions for bail, the temporary restraining order and the preliminary injunction. Dkt. Nos. 39, 40.

A week later, the petitioner continued with a "Supplemental Brief in Opposition" to the respondent's motion to dismiss. Dkt. No. 42. A week after that, the respondent filed a reply brief. Dkt. No. 43. The petitioner followed with a "Supplemental Emergency Motion for Temporary Restraining Order and Motion for Preliminary Injunction." Dkt. No. 45. In this motion, the petitioner asserted that the state unconstitutionally denied his early parole and conditioned his prison employment and work release upon his completion of treatment programs. Id. The petitioner also filed a declaration supporting that motion. Dkt. No. 46. Next, the petitioner submitted a "Reply in Opposition to

9

Respondent's Reply in Support of Motion to Dismiss the Petition." Dkt. No. 47.

In this pleading, the petitioner stressed the merits of his motions for a

restraining order and bail. Id. at 1. He underscored the merits of his *habeas*

petition, reiterating his constitutional claims and miscarriage of justice claims,

and disputed the conclusions of the ALJ, the Administrator, and the

respondent. Id. at 3-12. On May 4, 2020, he filed a letter requesting the docket.

Dkt. No. 49.

A month later, the petitioner filed a "Motion to Expedite Non-Dispositive

Motions." Dkt. No. 51. The petitioner argued that he "has an interest [in the]

rapid adjudication of his habeas petition by the court." Id. at 3. He complained

that "[t]here has been a [sixteen] month delay without the court deciding [his]

illegal confinement." Id. He stressed that "[h]e has been patient awaiting the

court's final decision on his habeas petition only to be informed seven months

after the court's September 20th order[] that there will be further delay." Id. He

urges that:

> [i]f the court grants [his] petition this year, his maximum discharge
> of sentence would revert to December 24, 2020. [The petitioner]
> would have [six] months or less remaining to discharge his sentence.
> Further, [the petitioner] would have been confined for [sixteen]
> months or more than he should have been confined, but was
> "confined longer" only "because of the court's docket backlog."
> Moreover, if the court grants [the petitioner's] habeas petition next
> year, he would [] have been confined beyond his original maximum
> sentence.

Id. According to the petitioner, "[t]he court's excessive delay in deciding [his]

petition is [a] sufficient ground[] for it to expedite its decision on his non-

dispositive motions." Id. This delay, he believes, warrants release on bail

10

pending review. Id. He attached a "Supplemental Motion for Bail Pending Resolution of Habeas Corpus Proceedings" to his motion to expedite the court's decision on non-dispositive motions. Id. at 5-7.

## II. Respondent's Motion to Dismiss (Dkt. No. 33)

### A. Respondent's Motion

The respondent asks the court to dismiss the petition as procedurally defaulted because (1) the petitioner did not present his claims to either the Wisconsin Court of Appeals or the Wisconsin Supreme Court, and (2) the Racine County Circuit Court's decision rested on an adequate and independent state-law ground. Dkt. No. 34 at 2. The respondent contends that the petitioner cannot show either cause and prejudice to excuse his default, or that a miscarriage of justice would result if this court denied *habeas* relief. Id. at 14.

Conceding that the petitioner has exhausted his state-court remedies, the respondent argues that the petitioner did not fairly present his claims to the Wisconsin Court of Appeals or the Wisconsin Supreme Court. Id. at 11. The respondent reasons that Wis. Stat. §808.03(1) allowed the petitioner ninety days to file a notice of appeal after the Racine County Circuit Court denied the petitioner's petition for writ of *certiorari* or *habeas corpus* under Wis. Stat. §801.02. Id. at 11-12. The respondent argues that because the petitioner did not appeal the decision in that time, he did not fairly present the claims he seeks to bring in federal court to all levels of the state court. Id. at 12.

The respondent also argues that the Racine County Circuit Court cited Wis. Stat. §801.02(7)(d) in denying the petitioner's petition for waiver of

prepayment of the filing fees, which constitutes an adequate and independent state ground. Id. at 13. The statute is "adequate because it is a mandatory rule of procedure that has existed since 1998." Id. (citing 1997 Wis. Act 133; State ex rel. Henderson v. Raemisch, 329 Wis. 2d 109, 117-18 (2010)). It also fulfills the "independent" requirement because "[the Racine County Circuit Court] based its decision to deny [the petitioner's] petition based entirely on the rule in [§802.01(7)d)]." Id.

The respondent argues that the petitioner cannot show cause for the default because no external impediment prevented him from presenting his claims to the state courts; the cause for his failure "stems from [the petitioner's] own actions." Id. at 15. The respondent reasons that the petitioner chose to forgo an appeal of the circuit court's order denying his petition. Id. "Moreover," the respondent concludes, "[the petitioner's] indigency and three prior dismissals would not have been a bar to appeal because the rule of section 802.01 does not apply to a request to waive prepayment of the appellate filing fee." Id. (citing State ex rel. Adell v. Smith, 238 Wis. 2d 655, 657, 59 (Wis. Ct. App. 2000) (per curiam)). Id. The respondent adds that the state procedural rule applied only because the petitioner had filed at least three prior frivolous lawsuits. Id. (citing Wisconsin Statutes §§801.02(7)(d), 802.05(4)(b)1.-4.). The respondent stated that because the petitioner could not show cause, the respondent did not need to address prejudice. Id. at 15-16 (citing Promotor v. Pollard, 628 F.3d 878, 887 (7th Cir. 2010)).

12

With respect to the petitioner's arguments about the miscarriage of justice exception, the respondent urges the court to reject those arguments for three reasons. First, she contends that the petitioner does not argue that he is actually innocent of the underlying conviction but rather challenges the decision to revoke his parole. Id. at 16. Second, even if the miscarriage of justice exception applied to parole decisions, "[the petitioner] has not shown that he is actually innocent of the parole violations underlying his revocation." Id. at 17. The respondent stresses that the petitioner does not argue that he is innocent of two of the violations—changing his name and employment without reporting to the agent—and that he previously admitted to failing to report. Id. "[A]s to the remaining violations," the respondent urges, "[the petitioner] has not met his burden of showing actual innocence;" the respondent argues that "given [the petitioner's] initial false statements that he did not know the women and the evidence corroborating the women's statements, [the petitioner's] claims that he did not commit the alleged violations were not credible." Id.

B.    Petitioner's Brief in Opposition (Dkt. No. 36)

The petitioner's opposition brief, titled "Petitioner's Brief in Response to District Court *Sua Sponte* Raising Issue of Procedural Default Grounds," challenges the constitutionality of the Wisconsin Prison Litigation Reform Act (PLRA), which includes §801.02(7)(d), as applied to the petitioner's state petition. Dkt. No. 36 at 2; see also Raemisch, 329 Wis.2d at 112. The petitioner suggests that, because he styled his filing in the Racine County Circuit Court as both a petition for writ of *certiorari* and for *habeas*, the statute improperly

13

suspends the writ of *habeas corpus*. Id. at 3-6. Alternatively, he argues that the statute is an inadequate state corrective process. Id. at 6. He cites Smith v. Bennett, 365 U.S. 708 (1961) for the proposition that when a state "interpose[s] any financial consideration between an indigent person of the state and his exercise of a state right to sue for liberty," the state denies that person equal protection of the laws. Id. at 4.

Finally, the petitioner raises miscarriage of justice arguments; he contends that he "has presented actual innocence claims because he is contesting the factual grounds upon which his revocation of his parole was based." Id. at 7. The petitioner again complains that Cindy Elmore did not testify at the revocation hearing, and that Michelle Stuckart provided inconsistent testimony at the hearing. Id. at 7-9. He argues that the Administrator's decision "*sua sponte* amended the Department's charge against him" from pimping to human trafficking; he finds that this constitutes a "failure to settle upon a single theory of guilt" and thus, a miscarriage of justice. Id. at 9.

C.     Petitioner's Supplemental Brief in Opposition (Dkt. No. 42)

A week after he filed his opposition brief, the petitioner filed a supplemental opposition brief, repeating his assertion that the PLRA is unconstitutional. Dkt. No. 42. He again cites Smith v. Bennett, 365 U.S. 708 (1961), for the proposition that under the Equal Protection Clause, a state cannot "interpose any financial consideration between an indigent prisoner . . . and his exercise of a state right to sue for his liberty." Id. at 2.

14

At the same time, the petitioner addresses some of the respondent's arguments for dismissing the petition. He disagrees with the respondent's argument that the state court's decision relied on an adequate and independent state-law ground; he asserts that the rules the Racine County Circuit Court relied on were not mandatory because "the circuit courts take their power . . . from the Constitution, not from the legislature." Id. at 1-2. He argues he did not have to appeal the circuit court's decision to not waive the fee and costs or to challenge the constitutionality of the PLRA in state courts because "[t]hose issues would have been unrelated to the merits of [his] [] habeas claims." Id. at 2-3. In any event, he argues that the Wisconsin courts already held that the PLRA [] applies to prisoners that seek to challenge the revocation of their parole," and "[t]hus, no further state court activity is necessary for this [c]ourt to review [the petitioner's] claims." Id. at 3. (citing Ross v. Israel, 503 F. Supp. 131, 133 (E.D. Wis. 1980); Pigee v. Israel, 503 F. Supp. 1170, 1172 (E.D. Wis. 1980)).

For cause, the petitioner stresses that "[§§801.02(7)(d) and 814.29] were external impediments to [the petitioner] presenting his claims in his habeas petition to each state court." Id. The petitioner rejects the respondent's argument that "the miscarriage of justice exception does not apply to administrative orders;" he raises Morrissey v. Brewer, 408 U.S. 471 (1972) for the proposition that "[s]ociety [] has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions." Id. at 3. And, he

15

faults the respondent for arguing that the petitioner initially denied knowing Elmore and Stuckart; he stresses that he never denied knowing them. Id. at 4-5.

D.   Respondent's Reply Brief (Dkt. No. 43)

The respondent maintains that the petitioner did not fairly present his claims to the Wisconsin appellate courts and has not overcome the resulting procedural default. Dkt. No. 43 at 2-3 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). The respondent notes that the petitioner now claims that he was not required to present his claims to the Wisconsin appellate courts; however, the petitioner argued to the Racine County Circuit Court that "the PLRA does not apply to a petition for writ of habeas corpus." Id. at 3 (citing dkt. no. 34-3). The respondent also points out that petitioner makes arguments never presented to the Wisconsin courts, such as the as-applied constitutional challenge and a challenge to the adequacy of the state court remedy. Id. (citing dkt. nos. 36 at 2-6, 42 at 1-2). Finally, the respondent argues that because the petitioner never raised these arguments, it is "unclear how the State courts would have ruled on those arguments had [the petitioner] presented them." Id. at 3-4 (citing State ex rel. Cramer v. Court of Appeals, 236 Wis. 2d 473 (2000); State ex rel. Tayr Kilaab al Ghashiyah (Khan) v. Sullivan, 235 Wis. 2d 260 (Wis. Ct. App. 2000); State ex rel. Stinson v. Morgan, 226 Wis. 2d 100 (Wis. Ct. App. 1999); State ex rel. Marth v. Smith, 224 Wis. 2d 578 (Wis. Ct. App. 1999)).

Regarding the petitioner's argument that Wisconsin's procedural rules constituted an external impediment sufficient to cause his procedural default,

16

the respondent concedes that the rules are external to the petitioner but argues that the rules did not cause the petitioner's default. Instead, the petitioner failed to follow the rules and nothing in the rules prevented him from appealing the Racine County Circuit Court's decision. Id.

As for the alleged miscarriage of justice, the respondent maintains that the petitioner cannot invoke the exception "by claiming actual innocence of the parole violations rather than the underlying offense." Id. at 5-6. The respondent argues that the petitioner's complaints about the ALJ's credibility determinations should fail because "[s]uch determinations are entitled to a very high level of deference," and the petitioner has not "met the heavy burden of showing" them to be unreasonable. Id. at 6 (citing Murell v. Frank, 332 F.3d 1102, 1112 (7th Cir. 2003)). "[I]n [the petitioner's] initial written statements," the respondent notes, "he denied knowing anything about [Elmore] and claimed that he had no recollection of how he knew [Stuckart]." Id. (citing Dkt. No. 21-1 at 12-16). The respondent concludes "[i]t was not unreasonable for the [ALJ] to discredit [the petitioner's] later claims that he did indeed remember the women, including his claims that he did not engage in any of the alleged misconduct involving the women." Id. (citing Dkt. No. 21-1 at 75-76).

The respondent asserts that the petitioner "gives no explanation" as to his claim that "[Stuckart's] revocation testimony was 'internally inconsistent,'" and "[t]hus, [the petitioner] makes no real argument that 'no reasonable [judge] would have found him guilty of the [parole violations] but for the error(s) he attributes to the state court.'" Id. at 6-7 (citing Dkt. No. 36 at 8; Dkt. No. 42 at

5; Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004)). The respondent argues that the petitioner's claim that "[Elmore's] conclusive statement to Officer Harnish exonerated [him]" was similarly unsupported and insufficient under the actual innocence standard. Id. at 7 (citing Dkt. No. 42 at 5). She concludes by arguing that the petitioner's remaining miscarriage of justice arguments fall short of that standard. Id.

The respondent also contends that the petitioner has not demonstrated that the Racine County Circuit Court did not rely on an adequate and independent state-law ground. Id. at 8. As to the petitioner's arguments that the PLRA requirements effectively and unconstitutionally suspend the writ of habeas corpus, the respondent points out that "the suspension clause . . . does not apply to the States," and "[t]hus, the only cognizable challenge that [the petitioner] raises is an alleged violation of the Wisconsin Constitution." Id. at 9 (citing Geach v. Olsen, 211 F.2d 682, 684 (7th Cir. 1954)). She contends that violations of state law do not sound in habeas, and adds that the cases the petitioner relies on for this argument analyze state procedural rules under constitutional requirements other than the suspension clause. Id. at 9-10.

The respondent concludes that "even if [the petitioner] raises a cognizable federal constitutional challenge to Wis. Stat. §801.02(7)(d), he must first present that challenge to the state courts." Id. at 10. She reasons that "[t]he same principles of comity and federalism that underly the exhaustion and procedural default doctrines require that a prisoner first present a constitutional claim to the state courts when that claim is used to excuse a

18

separate procedural default." Id. (citing Murray v. Carrier, 477 U.S. 478, 489 (1986); Edwards v. Carpenter, 529 U.S. 446 (2000)). The respondent asserts that the petitioner never presented an argument to the Wisconsin courts that Wis. Stat. §801.02(7)(d) is unconstitutional as applied to him. Id. at 11.

      E.     <u>Analysis</u>

            1.     *Procedural Default Doctrine*

                  a.     Fair presentment

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner must exhaust available state-court remedies before a district court will consider the merits of a constitutional claim in a federal *habeas* petition. 28 U.S.C. §2254(b)(1)(A). The exhaustion requirement provides the state an opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Bolton v. Akpore, 730 F.3d 685, 694 (7th Cir. 2013). To exhaust his claims, "[a] petitioner must raise his constitutional claims in state court 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" Weddington v. Zatecky, 721 F.3d 456, 465 (7th Cir. 2013) (quoting Villanueva v. Anglin, 719 F.3d 769, 775 (7th Cir. 2013)). To comport with this requirement, the prisoner must "fairly present" the claim in each appropriate state court. Bolton, 730 F.3d at 694-95. "The failure to present fairly each habeas claim in state court 'leads to a default of the claim[s] and bar[s] the federal court from reviewing the claim[s'] merits.'" Weddington, 721 F.3d at 456 (quoting Smith v. McKee, 598

F.3d 374, 382 (7th Cir. 2010)). The courts call this circumstance "procedural default."

If a prisoner files a federal petition without exhausting his state-court remedies, the federal court may dismiss it without prejudice so that the prisoner can return to state court to exhaust remaining remedies. <u>Bolton</u>, 730 F.3d at 696. If, however, the prisoner did not fairly present his federal claim to the state courts, and it is now too late to return to state court to do so, "it is not the exhaustion doctrine that stands in the path to habeas relief, . . . but rather the separate but related doctrine of procedural default." <u>Id.</u>; <u>see also</u> <u>Lewis v. Sternes</u>, 390 F.3d 1019, 1026 (7th Cir. 2004); <u>Perruquet</u>, 390 F.3d at 514; <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991).

b.    Adequate and independent state-law ground

One of the ways a criminal defendant can "procedurally default" on his claim—and lose his right to federal *habeas* review—is if the last state court that issued judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989) (quoting <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985)); <u>see also</u> <u>Perruquet</u>, 390 F.3d at 514. "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991). When a state court declines to review the merits of a state prisoner's claim because the state prisoner did not comply with an adequate and independent state procedural rule, a federal court will not review the merits of the claim. <u>Wainwright v.</u>

20

Sykes, 433 U.S. 72, 87 (1977). In other words, a federal *habeas* court cannot review questions of federal law if the state court has declined to review the merits of those questions because of a state procedural law that is "'independent of the federal question and adequate to support the judgment[.]'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729). A state procedural rule that is unconstitutional on its face or as applied, however, cannot form the basis for a procedural default. Reece v. State of Ga., 350 U.S. 85, 89 (1955).

There can be several kinds of state procedural bars, including, but not limited to, failing "to raise a claim of error at the time or in the place that state law requires." Trevino v. Thaler, 569 U.S. 413, 421 (2013). "Federal habeas courts must ascertain for themselves if the petitioner is in custody pursuant to a state court judgment that rests on independent and adequate state grounds." Coleman, 501 U.S. at 729. When considering whether a state court decision rests on a state procedural default, federal courts look to "the last explained state court judgment." Ylst, 501 U.S. at 805.

A state ground is independent "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." Thompkins v. Pfister, 698 F.3d 976, 986 (7th Cir. 2012). For a state procedural rule to be "independent," the state law ground for decision must not be "interwoven with the federal law." Michigan v. Long, 463 U.S. 1032, 1040 (1983). "The test to avoid procedural default in federal court is whether the state court's decision rests on the substantive claims primarily, that is,

whether there is no procedural ruling that is independent of the court's decision on the merits of the claims." Holmes v. Hardy, 608 F.3d 963, 967 (7th Cir. 2010). "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." Ylst, 501 U.S. at 801. However, "a state court that separately reaches the merits of a substantive claim may also produce an independent procedural ruling that bars federal habeas review." Holmes, 608 F.3d at 967. The question is whether the state court's procedural ruling is primary. If it is, then the procedural ruling is independent. Id.

As for adequacy, a state law ground is "adequate" "when it is a firmly established and regularly followed state practice at the time it is applied." Thompkins, 698 F.3d at 986; see also Ford v. Georgia, 498 U.S. 411, 424-25 (1991). When considering the adequacy of a state law ground, the court does not consider "whether the review by the state court was proper on the merits." Lee v. Foster, 750 F.3d 687, 694 (7th Cir. 2014). State procedural rules applied to novel circumstances not previously faced by the state courts are not sufficiently established to bar federal review on the merits. Del Vecchio v. Ill. Dep't. of Corr., 31 F.3d 1363, 1381 (7th Cir. 1994). A state procedural rule that is not strictly and regularly applied is not adequate to bar federal merits review. Johnson v. Lee, ___ U.S. ___, 136 S. Ct. 1802 (2016) (per curiam).

Finally, if the court determines that the petitioner's claims are procedurally defaulted, it must consider whether to excuse the default. Coleman, 501 U.S. at 750. A court may excuse default if the petitioner can

22

show either (1) cause for the default and resulting prejudice, or (2) that the failure to consider federal claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750 (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

"[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." Smith v. Murray, 477 U.S. 527, 536 (1986). A petitioner is not excused from properly pursuing his claim merely because he faced adverse legal authority. Engle v. Isaac, 456 U.S. 107, 130 (1982); accord Bousley v. U.S., 523 U.S. 614, 623 (1998) ("futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time").

To show that a miscarriage of justice would result if the court were to deny *habeas* relief, a petitioner must demonstrate that he is actually innocent of the offenses for which he was convicted. Hicks v. Hepp, 871 F.3d 513, 531 (7th Cir. 2017).

2.      *Application of the Law to the Petitioner's Facts*

All the petitioner's grounds for relief—his arguments that he was denied his Sixth Amendment and due process rights at his revocation hearing, and that the rule of supervision he was alleged to have violated was vague and

23

overbroad—suffer from the same procedural problems: he did not fairly present them to the Wisconsin appellate courts, and the Racine County Circuit Court relied on an adequate and independent state-law ground in denying his petition. Dkt. No. 34 at 7. The petitioner has not demonstrated cause or prejudice to excuse his defaults or shown that a miscarriage of justice will result if this court denies *habeas* relief.

The petitioner did not fairly present his federal claims to the Wisconsin courts. In Wisconsin, when the state revokes a prisoner's parole by administrative order, the prisoner may petition for writ of *certiorari* in the circuit court for the county in which he was convicted of the underlying crime. See, *e.g.*, State *ex rel.* Reddin v. Galster, 215 Wis. 2d 179 (Wis. Ct. App. 1997). If the circuit court denies the *certiorari* petition, including on procedural grounds, the prisoner can appeal that decision as of right to the Wisconsin Court of Appeals. See Wis. Stat. §808.03(1). Under Wisconsin Statute §808.04(1), a prisoner generally must file a notice of appeal within ninety days of the circuit court's decision. If the Wisconsin Court of Appeals denies relief, the prisoner may seek discretionary review from the Wisconsin Supreme Court under Wis. Stat. §808.10.

The Administrator of the DHA issued his decision sustaining the ALJ's order of revocation on February 8, 2019—eleven days before this court received the federal *habeas* petition. Dkt. No. 21-1 at 87-88. The petitioner dated his petition for writ of *certiorari* in the Racine County Circuit Court April 10, 2019—just shy of two months *after* this court received the federal *habeas*

24

petition.[2] Dkt. No. 34-4 at 1-5. The Racine County Circuit Court denied the *certiorari* petition on June 10, 2019. <u>Knowlin v. Hayes</u>, Case No. 2019IP000005 (Racine County Circuit Court), available at https://wcca.wicourts.gov (last visited July 2, 2020). Under Wis. Stat. §808.04(1), the petitioner had ninety days to appeal that decision to the Wisconsin Court of Appeals—in this case, he needed to file his appeal by September 9, 2019. He did not do so—he did not appeal at all. Because the petitioner did not appeal the circuit court's order, he did not fairly present his claims to every level of the Wisconsin state courts, and it is now too late to do so. <u>See</u> <u>Lewis</u>, 390 F.3d at 1026; <u>Perruquet</u>, 390 F.3d at 514; <u>Coleman</u>, 501 U.S. at 735 n.1.

The petitioner argues that he wasn't required to appeal the circuit court's decision before seeking relief, because the circuit court's decision was based on his ineligibility for waiver of the filing fee, not on the merits of his federal claims. The petitioner is correct that the circuit court's decision was not based on his federal claims. It was based on the petitioner's failure to comply with an independent and adequate state court procedural rule. Wis. Stat. §814.29 provides a procedure for indigent prisoners to seek leave to proceed in civil suits without prepaying the filing fees. Under Wisconsin Statute §801.02(7)(d), however,

> [i]f the prisoner seeks leave to proceed without giving security for costs or without the payment of any service or fee under [§814.29,] the court shall dismiss any action or special proceeding, including

---

[2] The court notes that the petitioner did not ask to stay the federal proceedings while he returned to state court to exhaust his claims. In fact, he filed motions asking the federal court to expedite its rulings, even though he had not exhausted his claims in state court.

a petition for a common law writ of certiorari, commenced by any prisoner if that prisoner has, on 3 or more prior occasions, while he or she was incarcerated, imprisoned, confined or detained in a jail or prison, brought an appeal, writ of error, action or special proceeding, including a petition for a common law writ of certiorari, that was dismissed by a state or federal court for any of the reasons listed in [§802.05(4)(b)(1)-(4)[3]]. The court may permit a prisoner to commence the action or special proceeding, notwithstanding this paragraph, if the court determines that the prisoner is in imminent danger of serious physical injury.

In other words, Wis. Stat. §801.02(7)(d) *requires* a court to dismiss *any* case brought by a prisoner if that prisoner (1) seeks leave to proceed without prepaying the filing fee on the basis of indigency, and (2) "on at least [three] prior occasions," a state or federal court has dismissed any action that prisoner commenced because it deemed the action frivolous.

The petitioner petitioned the Racine County Circuit Court for a waiver of prepayment of the filing fees for his *certiorari* petition on June 4, 2019, and the court denied the petition a week later. Dkt. Nos. 19; 19-1. The court expressly stated that it did so because "[t]he prisoner has, on three or more prior occasions, while he . . . was incarcerated, imprisoned, confined or detained in a jail or prison, brought an appeal, writ of error, action or special proceeding, including a petition for a common law writ of *certiorari*, that was dismissed by a state or federal court for the reasons listed in §802.05(3)(b) 1 to 4." Dkt. No. 19-1.

---

[3] Under Wis. Stat. §802.05(4)(b)(1), "the court may dismiss [an] action or special proceeding . . . if the court determines that the action or special proceeding . . . is frivolous."

26

Wis. Stat. §801.02(7)(d) constitutes a state procedural bar; the Racine County Circuit Court's decision not to review the merits of the petitioner's claims clearly and expressly relied on that state procedural bar. The bar was independent: the Racine County Circuit Court's decision relied on that bar alone and did not address any question of federal law or the merits of the petitioner's claims. The procedural bar was adequate; it was firmly established at the time the Racine County Circuit Court applied it to the petitioner. See 1997 Wisconsin Act 133. The circuit court did not apply the rule in a novel circumstance.

The petitioner argues that the Wisconsin PLRA (1997 Wisconsin Act 133)—under which Wis. Stat. §801.02(7)(a) was created, State ex rel. Speener v. Gudmanson, 610 N.W.2d 461, 472-73 (Wis. App. 2000)—is unconstitutional as applied to him because it suspends the writ of habeas corpus, is an inadequate state corrective process and denies him equal protection of the laws.

The Wisconsin PLRA does not suspend the writ of habeas corpus. The Wisconsin Court of Appeals rejected this argument twenty years ago, in State ex rel. Tayr Kilaab al Ghashiyan (Khan), 235 Wis. 2d 260, 266-67 (Wis. App. 2000). Nor does the petitioner's argument that the Wisconsin PLRA renders the state corrective process absent or ineffective help him. AEDPA says that a federal court cannot grant a federal habeas petition unless the petitioner either has exhausted his state remedies or "there is an absence of available State corrective process or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." The petitioner has—as the

27

respondent has conceded—exhausted his available remedies in state court, which demonstrates that there *was* a state corrective process available. Even if the petitioner had not exhausted his remedies, the Wisconsin PLRA does not result in an absence of available state corrective process. A state corrective process exists. The petitioner forfeited his right to use that process because he filed three matters that were dismissed as frivolous, but that does not mean there was no process.

The Wisconsin PLRA also does not deprive the petitioner of equal protection of the laws. Again, the Wisconsin Court of Appeals rejected this argument twenty years ago in <u>Sullivan</u>:

> [The appellant] argues that, by singling out prisoners who have filed three or more frivolous lawsuits, the provisions of WIS. STAT. §§ 801.02(7)(d) and 814.29(1m)(c) violate his constitutional right to equal protection of the laws. *See* U.S. CONST. amend. XIV; WIS. CONST. art. I, §1. Unless a legislative classification infringes upon a fundamental right or discriminates against a suspect class, the principle of equal protection requires only that the classification bear a "rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631 . . . (1996). For the reasons discussed above, [the appellant] has not demonstrated that §§ 801.02(7)(d) and 814.29(1m)(c) burden his fundamental right to court access, or that he has any other fundamental interest, such as a family relationship, at stake in the present litigation. Therefore, [the appellant's] claim does not warrant strict scrutiny, and will be reviewed under the rational relation standard.
>
> It is apparent that the state has a legitimate interest in deterring frivolous lawsuits and preserving judicial resources. *See, e.g.*, *Schlup v. Delo*, 513 U.S. 298, 322-24 . . . (1995). Distinguishing between prisoners and non-prisoners is a rational means of limiting frivolous litigation because it has been recognized that prisoners, as a group, have little incentive for refraining from suit, and account for a disproportionate amount of meritless litigation. *See Carson v. Johnson*, 112 F.3d 818, 822 (5th Cir. 1997) (citing *Roller v. Gunn*, 107 F.3d 227, 233-34 (4th Cir. 1997) and *Hampton v. Hobbs*, 106

28

F.3d 1281, 1286-87 (6th Cir. 1997)). Moreover, distinguishing prisoners who have filed three or more frivolous suits in the past from those who have not is rationally designed to target those prisoners who are most likely to be filing additional frivolous litigation. Finally, distinguishing between indigent prisoners with a history of frivolous litigation and those prisoners with a history of frivolous litigation who can afford to prepay the filing fee is rational because the latter group pays for some portion of the judicial resources they are expending. In sum while the classification drawn by the legislature may not be either the most all-encompassing or the most narrowly tailored response possible to the problem of frivolous litigation, it is certainly rational. We conclude that the three strikes provisions do not violate the equal protection clauses.

Sullivan, 235 Wis.2d at 270-273.

Finally, the court must consider whether to excuse the petitioner's default. Coleman, 501 U.S. at 750. For the court to excuse the default, the petitioner must have shown either (1) cause for the default and resulting prejudice, or (2) that the failure to consider federal claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750 (citations omitted). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

The petitioner argues that combined with his indigence, §801.02(7)(d)'s requirement of dismissal if the petitioner previously filed three actions dismissed as frivolous constitutes cause for this court to excuse his procedural default. Because Wisconsin allows indigent petitioners to proceed without paying the filing fee if they satisfy certain requirements, the petitioner can show cause only if some external impediment prevented him from satisfying

29

those requirements. The requirements themselves are not the "cause" of the petitioner's default. The petitioner has not identified any external impediment to his satisfying the requirements—indeed, the impediment was *internal* to the petitioner. It was his own choice to file three frivolous lawsuits. Nor will a miscarriage of justice result if the court denies *habeas* relief; the petitioner does not allege actual innocence of the offenses of conviction (though he disputes some of the ways in which evidence was presented at his parole revocation proceeding) and, as the court discusses below, his *habeas* claims have no merit.

3.    *Petitioner's Claims Fail on the Merits*

Even if the petitioner had not procedurally defaulted his federal *habeas* claims, the court would deny them on the merits. The ALJ did not violate the petitioner's Sixth Amendment right to confrontation or Fourteenth Amendment due process rights when he relied on Cindy Elmore's out-of-court statements (hearsay) during the revocation hearing. Nor was the petitioner denied his Sixth Amendment confrontation rights with regard to Michelle Stuckart.

"[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey v. Brewer, 408 U.S. 471, 480 (1972). The Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused enjoys the right to be confronted with the witnesses against him. U.S. CONST. amend. VI. In Crawford v. Washington, 541 U.S. 36, 68 (2004), the Supreme Court held that for a court to admit testimonial

30

hearsay in a criminal prosecution, the Sixth Amendment requires that the declarant be unavailable and the defendant have had a prior opportunity for cross-examination. "But parole revocations are not criminal prosecutions for Sixth Amendment purposes, so *Crawford* is inapplicable." Schmanke v. Irvins, 207 Fed. App'x 665, 658 (7th Cir. 2006) (citing United States v. Kelly, 446 F.3d 688, 692 (7th Cir. 2006); United States v. Hall, 419 F.3d 980, 985-86 (9th Cir. 2005)).

The fact that a revocation proceeding is not a criminal prosecution does not mean that a parolee is not entitled to due process; termination of parole "calls for some orderly process, however informal." Morrissey, 408 U.S. at 482. Due process, however, "is flexible and calls for such procedural protections as the particular situation demands." Id. at 481. The Supreme Court described the process due in a parole hearing, including a preliminary probable cause hearing before an independent hearing officer (and notice to the parolee of that hearing) and a final revocation hearing at which the parolee has the opportunity to be heard. Id. at 485-489. The process includes the "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Id. at 489.

The Seventh Circuit has interpreted that parenthetical phrase—"unless the hearing officer specifically finds good cause for not allowing confrontation"—as permitting "the admission of *reliable* hearsay at revocation hearings without a specific showing of good cause." United States v. Mosley, 759 F.3d 664, 667 (7th Cir. 2014) (citing Kelly, 446 F.3d at 692); see also,

Schmanke, 207 Fed. App'x at 658 (7th Cir. 2006) (citing United States v. Kelly, 446 F.3d 688, 692 (7th Cir. 2006); United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995)).[4] "Hearsay is reliable if it 'bears substantial guarantees of trust-worthiness.'" Mosley, 759 F.3d at 667 (citing Kelley, 446 F.3d at 692). The Seventh Circuit "essentially treats a finding of 'substantial trustworthiness' as the equivalent of a good cause finding for the admission of hearsay." Id. (citing Kelley, 446 F.3d at 692). "If the record so establishes, the admission of hearsay will 'not undermine the fundamental fairness of [a defendant's] revocation hearing and [will] not violate his right to due process.'" Id. (citing Kelley, 446 F.3d at 693).

The record contains a January 10, 2019 letter from Parole Agent Michelle Brost, describing the various (unsuccessful) efforts she had made to find Elmore and serve her with a subpoena to attend the revocation hearing. Dkt. No. 21-1 at 85-86. During the revocation proceeding, the ALJ noted that "Elmore did not testify." Dkt. No. 21-1 at 74. He clarified, however, that she "did provide statements to the police." Id. Elmore's statements to police described how she met the petitioner, how the petitioner drove her to Racine and Green Bay in order to "make some money for him" and how the petitioner forced her to perform oral sex. Id.

---

[4] The Wisconsin Supreme Court has held that hearsay—statements made outside of court and offered into evidence to prove the truth of the matter asserted, Wis. Stat. §908.01(3)—"is admissible during all administrative proceedings, including parole revocations." State ex rel. Fariole v. Foster, 378 Wis.2d 326 (Table), 2017 WL 4281020, at *5 (Ct. App. Sept. 26, 2017).

The ALJ "[found] good cause to rely on the statements of Elmore." Id. He reasoned that it was "not surprising that a person dragged against her will from Milwaukee would be afraid to" testify, and that her "statements [were] [] very reliable because they [were] corroborated in the pertinent details from four different sources:" (1) "they [were] corroborated by [the police] investigation;" (2) they "were consistent with that of [another witness] in the major details;" (3) they "[were] also consistent with those of Michelle Stuckart [] whom there is no evidence in the record ever met or talked to Elmore," and (4) they "are internally consistent." Id. at 75. The ALJ considered that "in his written statement, [the petitioner] denied knowing Elmore," but that at the hearing, he "admitted that he did know Elmore." Id. The ALJ found the petitioner's testimony "wholly not credible," noting that "[h]e initially lied about knowing Elmore, and his simple denial fl[ew] in the face of the detailed statement of Elmore and corroboration of those statements discussed above." Id.

On administrative appeal, the petitioner argued "that Ms. Elmore did not testify at the revocation hearing" and that the "ALJ improperly relied on her hearsay." Id. at 87. The administrator concluded that because "the DOC made reasonable, good faith efforts to contact and subpoena Ms. Elmore, but was unable to," the ALJ had "good cause to excuse her live testimony, and her statements to police were reliable." Id.

The ALJ had good cause for allowing Elmore's hearsay statements—the DOC tried to secure her appearance but couldn't and she had reason to be afraid to testify. The ALJ found numerous indicia of reliability for Elmore's

statements. And he found the petitioner's testimony to be incredible. The ALJ's reliance on Elmore's hearsay statements did not violate the petitioner's due process rights.

The petitioner also complains that the ALJ relied on hearsay from Janna Bennett. Dkt. No. 1 at 3. The ALJ explained that Bennett had provided a written statement but had not testified. Dkt. No. 21-1 at 74. It appears from the ALJ's account that Bennett indicated that while Elmore had sex with the petitioner, she "did not appear unwilling" and "Elmore did not appear like she was forced to be there." Id. Bennett also stated that the petitioner had tried to get her to engage in prostitution. Id. The ALJ found that Bennett's statements were consistent with Elmore's "in the major details." Id. at 75. Even if the ALJ's consideration of Bennett's hearsay statements violated due process, the DHA administrator disregarded them, finding that Bennett's statements, "(which both hurt and helped [the petitioner]) bore no indicia of reliability." Id. at 88.

The petitioner complains that Stuckart refused to answer defense counsel's questions at the revocation hearing. Dkt. No. 1 at 3. In his administrative appeal, the petitioner's lawyer argued that the petitioner's "right to confrontation was again unconstitutionally denied when Michelle Stuckart refused to answer defense counsel's questions; [when she] invoked her right to remain silent on only a portion of her testimony." Dkt. No. 21-1 at 82. The court does not know whether this is so—in referring to Stuckart, the administrator stated only that "[t]he ALJ heard the witnesses testify and found Ms. Stuckart more credible" than the petitioner. Id. at 88. If Stuckart did refuse

34

to answer, it appears that she did so by invoking her Fifth Amendment right against self-incrimination. "Where a witness refuses to answer certain questions on fifth amendment grounds, a defendant's right to confrontation is not violated when the record shows that the witness' credibility was adequately tested." State v. Robinson, 145 Wis.2d 273, 286 (Ct. App. 1988) (citing West v. State, 74 Wis.2d 390, 402-3 (Wis. 1976)). The ALJ found that Stuckart's statements were consistent with Elmore's, despite no evidence in the record that the two women ever had met or talked. Dkt. No. 21-1 at 75.

Finally, the petitioner's claim that the rule of supervision he is alleged to have violated is vague or overbroad fails. "[A] parolee's activities may be restricted substantially." Felce v. Fiedler, 974 F.2d 1484, 1487 (7th Cir. 1992) (citing Morrissey, 408 U.S. at 481). The Seventh Circuit has upheld conditions of parole where they were "reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment." Id. (citing Birzon v. King, 469 F.2d 1241, 1243 (2d Cir. 1972)). The United States Supreme Court has observed that

> to accomplish the purpose of parole, those who are allowed to leave prison early are subjected to specified conditions for the duration of their terms. These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law upon an individual citizen. Typically, parolees are forbidden to use liquor or to have associations or correspondence with certain categories of undesirable persons. Typically, also they must seek permission from their parole officers before engaging in specified activities, such as changing employment or living quarters, marrying, acquiring or operating a motor vehicle, traveling outside the community, and incurring substantial indebtedness.

35

Morrissey, 408 U.S. at 478. A parolee's liberty interest is conditional rather than absolute. Fiedler, 974 F.2d at 1489 (citing Morrissey, 408 U.S. at 480).

The rule of supervision that required the petitioner to inform his parole agent of a name change is not unconstitutionally vague or overbroad. The court agrees with the ALJ's determination that "it [would be] impossible for the [DOC] to properly supervise [the petitioner] if they do not know the name he [] [operat[ed] under." Dkt. No. 21-1 at 73. The rule is reasonably and necessarily related to a justifiable purpose of imprisonment.

The court will grant the respondent's motion to dismiss the petition.

### III. Petitioner's Motion for Reconsideration of Habeas Corpus Order (Dkt. No. 26)

Although the court's decision to grant the respondent's motion to dismiss technically moots the petitioner's other motions, the court will address them for the sake of the appellate record.

On September 30, 2019, the court received from the petitioner a motion asking the court to reconsider the "habeas corpus order." Dkt. No. 26. It isn't entirely clear, but it appears the petitioner was asking the court to reconsider its September 20, 2019 order declining to follow Judge Duffin's recommendation and ordering the respondent to answer (Dkt. No. 24). The petitioner argued that the court's September 20, 2019 order "did not make a mandatory order for respondent to certify the record and transcripts from the revocation hearing and [file] them within 60 day of the court's order." Dkt. No. 26 at 1. The petitioner asserted that the court raised procedural default *sua sponte*, and that he planned to argue actual innocence and thus needed the

36

record and transcripts to argue against procedural default. Id. The petitioner also argued that in addressing his motion for bail, the court erred in concluding that AEDPA applied to his case. Id. at 2. He asked the court to order the respondent to certify the parole revocation record and transcript and to file them by November 20, 2019. Id.

The petitioner filed his motion under Fed. R. Civ. P. 60(b)(6). Id. at 1. Rule 60(b)(6) allows a court to grant relief "from a final judgment, order, or proceeding" for "any other reason that justifies relief." The court's order allowing the petitioner to proceed on his claims and requiring the respondent to answer was not a "final order," nor was the court's order denying bail because the petitioner could bring that motion again at any time before the court decided that *habeas* petition. But even if the court's September 20, 2019 order constituted a final order under Rule 60(b), the court would not have granted the motion to reconsider. The petitioner cited no authority for his contention that the court should have ordered the respondent to "certify" the parole record and transcripts or require the respondent to file them by a date certain. Rule 4 of the Rules Governing Section 2254 Cases and Section 2255 Proceedings says only that the judge "must order the respondent to file an answer, motion, or other response within a fixed time, or to take whatever other action the judge may order." Rule 5(c) requires the respondent to include in the answer information about what transcripts are available, when they can be furnished and whether there are proceedings that have been recorded but not transcribed, and it allows the court to order the respondent to furnish part

of existing transcripts or transcribe un-transcribed proceedings. But in this case, the respondent did not file an answer. She filed a motion to dismiss. So her obligation to provide transcripts has not yet kicked in (and will not, because the court is granting the motion to dismiss). As to the court's ruling that AEDPA applied when the court considered his request for bail, the petitioner has provided no authority for his assertion that the court erred in that conclusion. The petitioner wrote his *habeas* petition himself, and he titled it "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. sec. 2254 By a Person in State Custody." Dkt. No. 1 at 1. The petitioner's motion to reconsider was without merit.

## IV. Petitioner's Notice of Motion and Emergency Motion for Temporary Restraining Order/Preliminary Injunction (Dkt. No. 37)

The petitioner asked the court to restrain the respondent from assigning him to treatment programs, which he argued required him to incriminate himself. Dkt. No. 37 at 1. He argued that he was being required to enroll in programs or be penalized for failing to enroll. Id. He also asked the court to order the respondent to schedule a re-classification hearing and reconsider his custody and placement, before the petitioner was scheduled to enroll in sex offender treatment in March 2020. Id. 3.

"To obtain a preliminary injunction, a plaintiff must first show that: (1) without such relief, [he] will suffer irreparable harm before final resolution of [his] claims; (2) traditional legal remedies would be inadequate; and (3) [he] has some likelihood of success on the merits." Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018) (citing Valencia v. City of Springfield, 883

38

F.3d 959, 965 (7th Cir. 2018); <u>Girl Scouts of Manitou Council, Inc. v. Girl</u>
<u>Scouts of the U.S. of Am., Inc.</u>, 549 F.3d 1079, 1086 (7th Cir. 2008)).

The petitioner cannot show that he has some likelihood of success on the
merits; the court is granting the motion to dismiss his petition. As for
irreparable injury, the plaintiff says that the social worker told him that as part
of the sex offender treatment, he had to admit to forcing Elmore to perform oral
sex (something he has not admitted to doing) but that if he made that
admission, it would be reported to the district attorney for possible
prosecution. Dkt. No. 37 at 8-9. That sounds unfair. But the injury the
petitioner says he will suffer if he does not comply with the requirements of the
sex offender training is that he will lose income—he wants to get out on work
release so that he can conduct his paralegal business, but says the
classification specialist told him he can't be released to work release until he
completes the sex offender training. <u>Id.</u> at 10-11. This goes less to irreparable
injury and more to the availability of a remedy at law. There is a remedy at law
for the plaintiff's loss of income—money damages. Money damages *are* the
traditional remedy at law, and the plaintiff can sue for those money damages if
he loses income as a result of what he believes is a wrongful classification.

The court will deny the motion for injunctive relief.

**V. Petitioner's Notice of Motion and Motion for Bail Pending Resolution
of Habeas Corpus Proceedings (Dkt. No. 38)**

This is the petitioner's third motion for bail during his *habeas* case. <u>See</u>
Dkt. No. 6 (seeking bail or temporary furlough to attend his father's funeral,
denied by Judge Duffin at Dkt. Nos. 9-10) and Dkt. No. 20 (arguing that his

39

parole revocation was invalid; denied by this court at Dkt. No. 24). The petitioner argues only that he believes he will succeed on the merits of his §2254 petition.[5] The court already has explained to the petitioner that the Seventh Circuit has admonished district courts to use their authority to grant bail in *habeas* cases sparingly. Dkt. No. 24 at 13 (citing <u>Cherek v. United States</u>, 767 F.2d 335, 337 (7th Cir. 1985)). The petitioner cannot show that he has a substantial, clear federal case on both the law and the facts, and he has not established "the existence of some circumstance which makes the request for bail exceptional and deserving of special treatment in the interest of justice." <u>Bergmann v. McCaughtrey</u>, 857 F. Supp. 640, 641 (E.D. Wis. 1994)).

The court will deny the petitioner's motion for bail.

---

[5] In his motion to expedite the petitioner says that he alleged "actual innocence" in his bail motion" but also characterizes his arguments as "insufficient evidence.". Dkt. No. 51. As he has throughout this litigation, the petitioner confuses those two concepts. Actual innocence is, as the Supreme Court has said, "very rare" for a petitioner to demonstrate; it requires a petitioner to "persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 386 (2013) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1994)). In contrast, a petitioner arguing insufficient evidence must show that "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." <u>United States v. Maez</u>, 960 F.3d 949, 966-67 (7th Cir. 2020) (quoting <u>United States v. Dewitt</u>, 943 F.3d 1092, 1096 (7th Cir. 2019)). The petitioner has presented no new evidence to demonstrate that no reasonable juror—or in this case, no reasonable ALJ—could have found that he violated his parole. He has tried to demonstrate that there was not enough evidence in the record to convince the ALJ to revoke his parole. He has not succeeded.

40

**VI.    Petitioner's Supplemental Emergency Motion for Temporary Restraining Order/Preliminary Injunction (Dkt. No. 45)**

Twenty-three days after the court received the petitioner's first motion for injunctive relief, it received this supplemental motion. The petitioner argued that being made to choose between admitting something in sex offender programming and working "is the very sort of choice that is likely to compel someone to be a witness against himself." Dkt. No. 45 at 2. He says he can't work in the prison unless he completes programming, and that his inability to complete programming due to his refusal to admit certain conduct deprives him of any income. Id. He says he will be unable to pay for healthcare if he can't work while in custody. Id. at 3. He repeats that he can't be released to work release unless his completes the programming. Id. He raises complaints (as he did in his last motion for injunctive relief) about what he perceives as flaws in the decision to require him to participate in sex offender training and in the sex offender training itself. Id.

The court already has concluded that the petitioner has no likelihood of success on the merits of his claims, and that he has an adequate remedy at law. The court will deny the supplemental motion for injunctive relief.

**VII.   Petitioner's Motion to Expedite Non-Dispositive Motions (Dkt. No. 51)**

In his last motion, the petitioner argued that it had taken the court sixteen months to decide his case. Dkt. No. 51 at 3. He says that if the court were to decide his petition in 2020, his maximum discharge date would become December 24, 2020 and would have been confined longer than he should have

been. Id. He asks that the court grant his non-dispositive motions based on the court's excessive delay in addressing his case. Id.

To the extent that the petitioner has asked the court to consider his case ahead of others that have been pending longer, the court has granted his request.

## VIII. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. See also 28 U.S.C. §2253(c)(1). This requirement exists because "[a] state prisoner whose petition for a writ of *habeas corpus* is denied by a federal district court does not enjoy an absolute right to appeal." Buck v. Davis, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). This court may issue a certificate of appealability only if the petitioner makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Peterson v. Douma, 751 F.3d 524, 528 (7th Cir. 2014) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). The court declines to issue a certificate of appealability because no reasonable jurist could debate the petitioner's procedural default or the court's decision to deny the petition on the merits.

## IX. Conclusion

The court **GRANTS** the respondent's motion to dismiss petition for writ of habeas corpus. Dkt. No. 33.

The court **DENIES** the petitioner's motion for reconsideration of habeas corpus order. Dkt. No. 26.

The court **DENIES** the petitioner's notice of motion and emergency motion for temporary restraining order/preliminary injunction. Dkt. No. 37.

The court **DENIES** the petitioner's notice of motion and motion for bail pending resolution of habeas corpus proceedings. Dkt. No. 38.

The court **DENIES** the petitioner's supplemental emergency motion for temporary restraining order/preliminary injunction. Dkt. No. 45.

The court **GRANTS** the petitioner's motion to expedite non-dispositive motions. Dkt. No. 51.

The court **ORDERS** that the petition for writ of *habeas corpus* is **DISMISSED**. Dkt. No. 1.

The court **DECLINES** to issue a certificate of appealability.

Dated in Milwaukee, Wisconsin this 7th day of July, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

43